UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANDREW G. HOUSEY and A.G. HOUSEY, INC.,

    Plaintiffs,

v.

                              Case No. 05-CV-74697-DT

CLARENCE McNEAL et al.,

    Defendants.

                                            /

**ORDER GRANTING DEFENDANTS' "MOTION FOR JUDGMENT ON THE PLEADINGS" AND DENYING PLAINTIFFS' "MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT"**

Pending before the court is Defendants' "Motion for Judgment on the Pleadings" and Plaintiff's "Motion For Leave to File Amended Complaint."[1] The court conducted a hearing in these matters on April 12, 2006. For the reasons stated below, the court will grant Defendants' motion and deny Plaintiffs' motion.

**I. BACKGROUND**

In their complaint, filed on December 12, 2005, Plaintiffs Andrew G. Housey ("Andrew Housey") and A.G. Housey Inc. ("Housey, Inc.") allege that "[d]uring . . . Defendant [Wayne County's] fiscal year 2004[-]2005, Plaintiff [Housey, Inc.] had a contract with . . . Defendant [Wayne County] for the maintenance of the golf course known as Inkster Valley, . . . which is owned and operated by Defendant [Wayne

---

[1] Defendants filed their motion as a "Motion for Judgment on the Pleadings" pursuant to Federal Rule of Civil Procedure 12(b)(6). During the hearing held in this matter, defense counsel stated that the motion before the court should be interpreted as a motion for summary judgment.

County]." (Pls.' Compl. at ¶ 13.)  Plaintiffs allege that in this same fiscal year, Defendant Wayne County issued a Request for Proposals ("RFP") in which it requested bids for the operation of two county owned golf courses, Warren Valley Golf Course and Inkster Valley Golf Course.  (*Id*. at ¶ 14.)  Plaintiff Housey Inc. responded to the RFP and submitted a proposal which Plaintiffs allege would have generated more revenues for Defendant [Wayne County] than any other proposal that was submitted.  (*Id*. at ¶ 15.)  Plaintiffs also allege that while Housey Inc.'s bid was pending, Plaintiff Andrew Housey was continuously solicited to make campaign contributions to Wayne County Executive Robert Ficano's ("Ficano's") campaign.  (*Id*. at ¶ 16.)  Plaintiffs also allege that Defendant Beverly Watts solicited Plaintiff Andrew Housey to make contributions to the Wayne County Parks Millage during the 2005 election year.  (*Id*. at ¶ 17.)  Plaintiffs assert that Plaintiff Andrew Housey contributed to the Wayne County Parks Millage, but did not contribute to Ficano's campaign.  (*Id*. at ¶ 18.)  Plaintiffs assert that the contract was awarded to Torre & Bruglio Golf Course Management, Inc. ("TBGCM"), a company that contributed a "significant amount of money" to Ficano's campaign.  (*Id*. at ¶¶ 20, 24.)  Plaintiffs also allege that Defendant Wayne County later submitted an addendum to the "RFP" in which it proposed to have Wayne County loan TBGCM $600,000 for the operation of the golf courses.  (*Id*. at ¶ 22.)  In their decision not to award the contract to Plaintiffs, Plaintiffs allege that Defendants violated the First and Fourteenth Amendments.  On January 17, 2006, Defendants filed the motion currently before the court.

In Plaintiffs' motion to amend their complaint, filed on February 22, 2006, Plaintiffs do not identify the changes that they propose to make in their amended complaint, but submit only a copy of the new complaint. In the court's independent review of the complaints, it appears that Plaintiffs seeks to add an additional Defendant, Stacy Durant, identify Andrew Housey as the majority shareholder of Housey, Inc, make mention of Deborah Hoadley, and also allege they maintained both the Inkster Valley and Warren Valley Golf Courses during the fiscal year 2004-2005.

## II.  STANDARDS

### A.  Federal Rule of Civil Procedure 56

Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment motions, provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mt. Lebanon Per. Care Home, Inc. v. Hoover Univ., Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  It is not necessary for the moving party to support its motion with affidavits or other similar forms of evidence; rather, the movant need only show that "there is an absence of evidence to

support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The moving party may meet his initial burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). If the moving party meets this initial burden, the non-moving party must then present admissible evidence establishing a genuine material issue of fact. *Id.* The non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in order to defeat a properly supported motion for summary judgment." *Id.*

The party who bears the burden of proof must present evidence establishing a jury question as to each element of his claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to present sufficient evidence on an essential element of a claim renders all other facts immaterial for purposes of summary judgment. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Although the non-moving party is entitled to a review of the evidence in the light most favorable to him, he is required to do more than simply show that there is some "metaphysical doubt as to the material facts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co.*, 475 U.S. at 586)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. Therefore, the court must necessarily examine the evidence provided in a light that is most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654,

655 (1962), and decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251-252.

### B.  Federal Rule of Civil Procedure 15

The decision whether to grant leave to amend the pleadings is governed by Federal Rule of Civil Procedure 15.  Rule 15 provides that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'"  *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

### III.  DISCUSSION

In their motion for summary judgment, Defendants assert that: Plaintiffs' complaint fails to state a claim because Plaintiffs are "nothing more than bidders or applicants for a new government contract;" Plaintiff Andrew Housey lacks standing; Plaintiffs failed to name an indispensable party (the Roostertail), Plaintiffs' complaint fails to state a viable *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) claim, and the individual Defendants are protected by qualified immunity.

5

### A. The First Amendment Requirement That There Be a Pre-Existing Relationship Between the Contractor and the Government

Defendants assert that they "are petitioning dismissal" because "the First Amendment does not apply to disappointed bidders." (Defs.' Mot. at 2.) In support of this contention, Defendants rely on *Bd. Of County Comm'r's Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668 (1996) and *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996). In both *Umbehr* and *O'Hare*, the Court held that the government may not terminate an independent contractor's relationship for the purpose of retaliating against the contractor for expressing certain political allegiances and associations. Notably, the Court has held that it is imperative that the contractor have had a pre-existing relationship with the government. *See Umbehr*, 518 U.S. at 685. Indeed, the *Umbehr* Court specifically held that:

> Finally, we emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.

*Id.*

In response to Defendants' contentions, Plaintiffs assert that they "had a pre-existing commercial relationship with Defendants," as "Plaintiffs and Defendants were already under contract for the maintenance and care of the exact same golf courses (Inkster Valley and Warren Valley)." (Pls.' Resp. at 7.) In regard to the question of a pre-existing relationship, the court finds the Third Circuit Court of Appeals decision in *McClintock v. Eichelberger*, 169 F.3d 812 (3rd Cir. 1999), albeit not binding authority, to

be persuasive in this matter. In *McClintock*, the contractor had a contract with the government in 1985, another contract in 1992, and a vendor-vendee relationship with the government from 1995-1997. *Id*. at 814. In 1997, the contractor bid on a contract and his bid was rejected. *Id*. The *McClintock* court concluded that the contractor was not in a pre-existing relationship with the government because the contractor lacked an ongoing business relationship with the government. *Id*. at 816. In particular, the *McClintock* court held that:

> Appellants do not allege that the contract for marketing services in connection with the TEAM PA Initiative involved here is related in any way to their prior contracts with Southern Alleghenies. Thus, their status differs from that of the plaintiffs in Umbehr and O'Hare who were providing ongoing services when the public entities terminated their relationship in retaliation for their political activities. We therefore conclude that with respect to the TEAM PA Initiative, this action does not concern[ ] the termination of a pre-existing commercial relationship with the government. Rather, this case involves a suit[ ] by [a] bidder[ ] or applicant[ ] for [a] new government contract[ ] who cannot rely on such a relationship.

*Id.* (citations omitted).[2]

In addition, the Eleventh Circuit follows the rule of law established in *McClintock*. In *Mangieri v. DCH Healthcare Authority*, 304 F.3d 1072 (11th Cir. 2002), although not binding authority, the Eleventh Circuit held that there was a pre-existing relationship between the contractor and the government in its case and distinguished the facts

---

[2]At the hearing conducted in this matter, Plaintiffs conceded that their case fails in the face of *McClintock*, but Plaintiffs' counsel stated that his law clerk contacted him via telephone on his way to the hearing relating to case law in the Sixth Circuit contrary to *McClintock*. However, in their "Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss," Plaintiffs stated that the "case Plaintiff had learned about on the way to oral argument [and referred to during the hearing] . . . does not support Plaintiffs' position." (Supp. Mem at 1.)

7

before it from those found in *McClintock*. In making its decision, the *Mangieri* court noted the similarity in the contracts it was comparing. Indeed, the *Mangieri* court stated that "[the contractor] did have ongoing contractual relations with the Authority since as early as 1995. Furthermore, the services provided under those earlier contracts were of the same kind as the services which Mangieri bid upon and was rejected for in 1999." *Id*. at 1076.

In the instant case, Plaintiffs have not alleged that they had a previous relationship with Wayne County that involved contracts "of the same kind" as the one at issue in this case. *See Mangieri*, 304 F.3d at 1076. Plaintiff Housey, Inc.'s previous contracts with Wayne County covered only *maintenance* of one to two golf courses, whereas the contract that Housey Inc. bid for entailed *operation* of the Inkster Valley golf course and the Warren Valley Golf Course. As Plaintiffs acknowledged at the hearing, maintenance and operation of golf courses do not involve "the same kind [of] services." *See id.* The court finds that based on Plaintiffs' failure to allege a sufficiently similar prior business relationship with Defendant Wayne County, Defendants' motion should be granted and the court need not review Defendants' alternate theories for granting summary judgment in their favor.

### B. Plaintiffs' Motion to Amend Their Complaint

Finally, the court finds that allowing Plaintiffs to amend their complaint to add an additional Defendant, Stacy Durant, and make minor factual alterations, would be futile as Plaintiffs' complaint cannot sustain the pre-existing relationship standard set forth in *Umbehr* and *O'Hare*. *See General Elec. Co.*, 916 F.2d at 1130 (holding that one factor

which may be considered by the trial court is "futility of amendment.").

## IV.  CONCLUSION

IT IS ORDERED that Defendants' motion for summary judgment [Dkt. # 8] is GRANTED and Plaintiffs' motion to amend their complaint [Dkt. #16] is DENIED.


   S/Robert H. Cleland                    
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 20, 2006, by electronic and/or ordinary mail.

   S/Lisa Wagner                         
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Odd Orders\05-74697.HOUSEY.GrantingSJMotionAndDenyingMotionToAmendComplaint.wpd